IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

EPSON AMERICA, INC.,

        Plaintiff,

v.                                                                    Case No.

SAFE SPACE SCAN TECHNOLOGY LLC
d/b/a AWOL VISION

        Defendant.

_____

## VERIFIED COMPLAINT AND JURY DEMAND

Plaintiff Epson America, Inc. ("Epson") by and through its undersigned counsel, complains of defendant Safe Space Scan Technology LLC d/b/a AWOL Vision's ("Defendant" or "AWOL") misconduct and alleges as follows:

## NATURE OF THIS ACTION

1.      This is an action for false advertising arising under the Lanham Act, 15 U.S.C. § 1051, *et seq*.  Defendant's conduct has produced and, unless enjoined by this Court, will continue to produce a likelihood of consumer confusion and deception, to the irreparable injury of Epson.

## JURISDICTION AND VENUE

2.      This action arises under 15 U.S.C. § 1125(a).  This Court has jurisdiction over the subject matter of this Complaint pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), as the primary claim arises under the trademark laws of the United States.

3.      Defendant is subject to personal jurisdiction in this forum because its principal place of business is located in the State of Florida, and this District; it sells products to residents

of the State of Florida, and this District; because Defendant misrepresented the nature of products to residents within the United States, the State of Florida, and this District; because Defendant has caused injury to Epson within the United States, the State of Florida, and this District; because Defendant practices the unlawful conduct complained of herein, in part, within the State of Florida, and this District; because Defendant regularly conducts or solicits business within the United States, the State of Florida, and this District; because Defendant regularly and systematically directs electronic activity into the United States, the State of Florida, and this District, with the manifest intent of engaging in business within the United States, the State of Florida, and this District, including the sale and/or offer for sale of products to Internet users within the United States, the State of Florida, and this District, and because, upon information and belief, Defendant has entered into contracts with residents of the United States, the State of Florida and this District for the sale of items through various online retail platforms.

4.     Venue is proper in this judicial district under 28 U.S.C. § 1391.

## PARTIES

5.     Plaintiff Epson America, Inc. is a California corporation having its principal place of business in Los Alamitos, California.  It is a principal subsidiary of Seiko Epson Corporation, a Japanese corporation headquartered in Suwa, Nagano.  Epson is a leading manufacturer in the printer, professional imaging, projector, scanner, systems devices, and factory automation categories.  Epson has been a leading innovator in its field since it was founded in 1942.

6.     Defendant AWOL is a Florida limited liability company having its principal place of business located at 9169 W Atlantic Ave., Suite 118, Delray Beach, Florida 33446. Defendant also does business within the State of Florida via online commerce sites, including but not limited to:

- Amazon.com via the seller account AWOL VISION, Amazon seller ID A2H78IMA6IJC2T.

7.     This action seeks redress for Defendant's deliberate and unlawful misleading representations regarding the light output of their projectors.  Defendant uses false claims regarding the light output of their projectors in their product descriptions and advertising.

## FACTS GIVING RISE TO THIS ACTION

### Portable Consumer Projectors

8.     While traditionally associated with movie theaters, projectors have become an increasingly common video display product for consumers used in home, business, and educational settings.

9.     Today, consumers use digital projectors in the same way as television or computer screens.  Digital projectors receive video signals from external devices, such as computers, and "project" those signals onto a screen.

10.     Consumers can purchase projectors in a variety of sizes ranging from the size of a cell phone to larger, permanently-mounted projectors for home theaters.

11.     Within a particular projector category, such as portable consumer projectors, the quality and corresponding price of a specific projector is largely determined by its resolution and light output.

12.     Projector light output is measured and described in lumens.  The higher the lumen rating, the brighter the projector, and, all else being equal, the more it will likely cost.

13.     The lumen rating for a projector is one of the most important and immediately recognizable projector features for consumers, and one that necessarily impacts consumer choice.

14.     For this reason, lumen ratings are used to create sub-groups of portable consumer projectors, and serve as a measuring stick for consumers to compare projectors.

15.     Due to the importance of a projector's brightness levels, manufacturers prominently display and advertise a projector's lumen rating on its packaging and advertising.

16.     In the case of online marketplaces, sellers list a projector's lumen rating in the product description, title, and even in the product name.

**Epson Projectors**

17.     Epson is recognized throughout the world and the United States as a leading projector manufacturer.

18.     As a market leader, Epson continues to set standards for image quality, performance, and innovation with its line of multimedia projectors.  Epson's commitment to delivering quality products is recognized by the industry through various product awards and industry recognition.

19.     Epson prides itself on achieving the highest customer satisfaction ratings, accomplished in large part by using the most precise testing equipment and procedures available.

20.     Epson has spent millions of dollars and significant time and effort in advertising, promoting, and developing its brand and establishing substantial goodwill in the portable consumer projector market

**Defendant's False Advertising of its Projectors**

21.     Defendant is a direct competitor of Epson in the portable consumer projector market.  Defendant sells and offers for sale projectors to consumers throughout the United States via its own website, www.awolvision.com, its brick-and-mortar retail location, and various online commerce sites including, but not limited to, Amazon.com and Walmart.com.

22.     Defendant sells its projectors under various models including, but not limited to, the AWOL 4K 3D Triple Laser Projector LTV-2500 (the "LTV-2500") and the AWOL 4K 3D Triple Laser Projector LTV-3000 Pro (the "LTV-3000").

23.     On Defendant's Amazon.com store, Defendant advertises the following brightness values for its LTV-2500 and LTV-3000 projector models:





24.     On Defendant's website www.awolvision.com Defendant advertises the following brightness values for its LTV-2500 projector model:



25.     On Defendant's Amazon.com product page, Defendant advertises the following

brightness values for its LTV-2500 projector model:





26.    On Walmart.com, Defendant advertises the following brightness values for its LTV-2500 projector model:





27.     On Defendant's Amazon.com product page, Defendant advertises the following brightness values for its LTV-3000 projector model:



28.     On Defendant's website www.awolvision.com, Defendant advertises the following brightness values for its LTV-3000 projector model:









29.   On Walmart.com, Defendant advertises the following brightness values for its LTV-3000 projector model:





Product details                                                    ∧

LTV-3000 Pro

The Most Adaptable 4K 3D RBG Ultra Short Throw Laser Projector
AWOL VISION LTV-3000 Pro is the Most Adaptable 4K 3D RBG Ultra Short Throw Laser Projector. Powered with stunning
3000 Peak Lumens, it presents remarkable clarity in most lighting conditions day or night. With Triple Laser (without Color
Wheel) Technology, 4K UHD with Dolby Vision, HDR10+ and 3D Available, Smart Room Ready, LTV-3000 Pro presents an
unmatched sharp and colorful image. Coupled with exceptional audio immersion technology with Dolby Atmos, LTV-3000
Pro brings you an immersive 80"-150" home theater experience for the whole day.

Product Features:
3000 Peak Lumens
Triple Laser (RGB),Color Gamut
107% Rec 2020 or 147% DCI-P3
Dolby Vision Ready, Active
3D Capability
Ready to Stream
Smart Room Ready
Turbo Game mode
24 FPS for Cinema Purists
36W Dolby Atmos Sound with Earc
Enhanced Black Level
4K Ultra HD with HDR10+
Learn More Features in [About the brand]

30.     As shown above, each of the above brightness values is prominently displayed in both the projectors' listing page titles as well as throughout the projectors' listing pages.

31.     Defendant makes these statements, recognizing the importance of brightness to a consumer.

32.     Throughout each of its products' pages, Defendant touts the brightness performance of its projectors in both the product's title and throughout its description of the product's performance.

33.     In order to gain initial traction in the United States projector marketplace, AWOL is purposefully and deceptively inflating the brightness specification of its projectors.

34.     Epson tested the brightness of several of Defendant's LTV-2500 and LTV-3000 projectors.  Of the AWOL projectors tested by Epson, each projector tested significantly below its advertised brightness value.

35.     Defendant's purposeful inflation of the brightness specification of its projectors has caused significant confusion in the marketplace.

36.     As a result, purchasers of any of AWOL's projectors are likely to be, and have actually been, misled and deceived by AWOL's literally false product labeling, descriptions, and advertisements. For example, customers left the following feedback on Defendant's Amazon.com projector page:

---

**T. Wernette**

⭐☆☆☆☆ **Not bright for a 3K (Laser), short distance projector.**
Reviewed in the United States on April 21, 2023
Size: LTV-2500    **Verified Purchase**

This projector has a brilliant splash screen that is so bright you have to look away from it. Then the regular brightness takes over and every other source is dull by comparison.

Pros:

Sound from HDMI and Firestick sources can be very loud, and is clear.

Remote is very intuitive, not too many buttons.

I appreciate the Eye Protection feature that switches off the laser when machine senses proximity movement. The laser is intense, I initially put a dust-cover over the aperture, thinking I was keeping
dust off of the emitter.... The laser deformed the plastic dust cover, and could have burned through.

Cons:

Menu preferences mis-represented. I've tried to disable the splash screen in the Menu several times, but it's always enabled. I don't wish to see a brilliantly-bright video sample only to be disappointed by lackluster lumens from every HDMI or 4K streaming video from the built-in Firestick.

The projector has built in Firestick, but it's OS is 2 versions out of date. The projector has update capability, but seemingly the Firestick OS was ignored.

Convergence controls are a joke. No true Keystone adjustment. The control is a wide-format rectangle with rudimentary adjustment.

Blutooth control is a lacking. If you select Bluetooth connection, the sound is horrendous. You don't get any tone controls, just presets of ATMOS, Dolby, or PCM connection. No selection of tone controls anywhere. Your Bluetooth listening over this projector's speakers is truly the quality of dreary fog.

Something is off about the brightness. When watching any video source, the dark scenes come in very dark. I use a projection screen from Da-lite, it has a medium gain. I have to turn off every light in the room to view details in darkly-lit scenes. Normal daylight videos are satisfactory, but any video shot for night is almost dark to see in average room lighting.

Captioning is not high definition. Source video can be 4K or Blu-ray, but captioning looks like something from a 1990s Amiga computer. You can see red lines bordering the captioning, almost like the fonts are misaligned. It's distracting.

What the device does have, is independent level control for Red/Green/Blue colors, but when adjusted I didn't see any change in overall brightness of the projector. Once again, Disappointing. I'd rather have 1 brightness control that works, instead of individual colors that don't.

All control is remote only. Lose the remote, or if it fails, you're screwed.

Conclusion:

There are many other features of this machine that could have been made better. Some of the remote device management is too complicated, and some essential classroom projector controls are just plain absent (keystone).

While the overall quality of 4K video is outstanding, these other issues with lackluster brightness / crude adjustments / lack of sound control, make the experience frustrating. This is not a $3,000 projector, it's a disappointment.

---

37.     Consumers expect the represented product specifications to be accurate for AWOL's projectors, as they base their purchasing decisions in large part on these representations. In fact, consumers that purchase Defendant's projectors receive projectors with drastically lower performance outputs.

38.     AWOL's literally false and misleading product labeling, descriptions, and advertisements are damaging to Epson and are also damaging to the consuming public.  These false and misleading representations are designed to entice consumers to purchase Defendant's products over Epson's products.

39.     The natural, probable, and foreseeable result of AWOL's wrongful conduct has been to cause confusion, deception, and mistake in the consumer projector marketplace as a whole, to deprive Epson of business and goodwill, to injure Epson's relationship with existing and prospective customers, and to divert sales of Epson projectors.

40.     By means of example, after having a poor experience with AWOL's projector with an improperly inflated lumen value of "3000 lumen," the consuming public is less likely to purchase a projector with a lumen rating of 3000 lumens as consumers will be unaware that AWOL's "3000 lumen" projector is not representative of the performance of a true 3000 lumen projector.  This causes irreparable harm to Epson as well as to the entire portable projector marketplace.

41.     Epson is informed and believes that AWOL's wrongful conduct has resulted in increased sales and market share of AWOL's projectors while hindering the sales and market share of Epson's projectors and damaging Epson's goodwill.

42.     Epson has sustained and will continue to sustain irreparable damages as a result of AWOL's wrongful conduct, unless enjoined.

## COUNT I

### False Advertising / Unfair Competition - Lanham Act

43.     Epson hereby realleges each and every allegation contained in paragraphs 1 through 38 as if fully set forth herein.

44.     Defendant has made and distributed, in interstate commerce and in this District, product listings and advertisements that contain false or misleading statements of fact regarding their products.  These advertisements contain actual misstatements and/or misleading statements, including the light outputs of their projectors - attributes important to a consumer's purchasing decision.  These literally false statements and product performance attributes actually deceive, or have a tendency to deceive, a substantial segment of Epson's customers and potential customers. This deception is material in that it is likely to influence the purchasing decisions of Epson's customers.

45.     Defendant's false and misleading advertisements constitute unfair competition and injure both consumers and Epson.

46.     Defendant's false and misleading advertisements violate Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

47.     Defendant, as described more fully above, has caused, and will continue to cause, immediate and irreparable injury to Epson for which there is no adequate remedy at law.  As such, Epson is entitled to an injunction under 15 U.S.C. § 1116 restraining Defendant, its distributors, retailers, agents, employees, representatives, and all persons acting in concert with it, from engaging in further acts of false advertising, and ordering removal of all Defendant's false advertisements.

48.     Defendant's actions are willful and done solely to improperly gain market share.

49.     Pursuant to 15 U.S.C. § 1117, Epson is entitled to recover from Defendant the damages sustained by Epson as a result of Defendant's acts in violation of Section 43 of the Lanham Act.

50.     Pursuant to 15 U.S.C. § 1117, Epson is also entitled to recover from Defendant the gains, profits, and advantages that they have obtained as a result of its unlawful acts.  Epson is presently unable to ascertain the full amount of the gains, profits, and advantages Defendant has obtained by reason of its unlawful acts.

51.     Pursuant to 15 U.S.C. § 1117, Epson is further entitled to recover the costs of this action.  Moreover, Epson is informed and believes that Defendant's conduct was undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Epson to recover additional damages and reasonable attorneys' fees.

## COUNT II

### False Advertising / Unfair Competition - FDUTPA

52.     Epson hereby realleges each and every allegation contained in paragraphs 1 through 47 as if fully set forth herein.

53.     AWOL's past and continued false advertising and intent to deceive and defraud the purchasing public into believing that their products perform at much higher standards constitutes an unfair and deceptive act or practice in the conduct of trade or commerce in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Section 501.201 *et. seq.*, Florida Statutes.

54.     AWOL's advertisement of projectors containing inflated brightness specifications is likely to (and actually does) deceive consumers in Florida and across the country.

55.     AWOL's false advertisement of its projectors' performance levels has proximately caused Epson to suffer actual damages in lost sales, because potential customers are led to believe that Epson's product (which properly discloses its accurate brightness levels) performs poorly by comparison.

56.     Epson is unable to fairly compete in a market where its competitors are able to inflate their brightness values and thus suggest higher image quality. As a direct result of AWOL's unfair and deceptive trade practices, Epson has been injured and damaged, and is entitled to injunctive relief, actual damages, costs, and attorneys' fees.

### PRAYER FOR RELIEF

57.     WHEREFORE, Epson prays for judgment against AWOL as follows:

58.     For temporary, preliminary, and permanent injunctive relief prohibiting AWOL, its distributors, retailers, agents, or anyone working for, in concert with, or on behalf of AWOL to sell its products, from engaging in false or misleading advertising with respect to its projector products, and/or violating Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), which relief includes but is not limited to removal of all AWOL's products from its website, www.awolvision.com, online commerce sites, such as, but not limited to, Amazon.com and Walmart.com, as well as retail stores, until such a time as AWOL can correct its false or misleading advertisements;

59.     For an order requiring AWOL to correct any erroneous impression consumers may have derived concerning the nature, characteristics, or qualities of AWOL's projectors, including without limitation, the placement of corrective advertising and providing written notice to the public and its prior customers;

60. That AWOL be adjudged to have violated 15 U.S.C. § 1125(a) and Fla. Stat. § 501.201 *et. seq.* by unfairly competing against Epson by using false, deceptive or misleading statements of fact that misrepresent the nature, quality, and characteristics of Defendant's projectors;

61. That Epson be awarded damages it has sustained in consequence of Defendant's conduct including, but not limited to, its loss of market share;

62. That Epson be awarded Defendant's profits obtained by Defendant as a consequence of its conduct;

63. That such damages and profits be trebled and awarded to Epson as a result of Defendant's willful, intentional, and deliberate acts in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a);

64. That Epson be awarded exemplary and punitive damages;

65. That Epson recover its costs and reasonable attorneys' fees as allowed by law pursuant to 15 U.S.C. § 1117 and Fla. Stat. § 501.2105;

66. That all of Defendant's misleading and deceptive materials and products be destroyed as allowed under 15 U.S.C. § 1118;

67. That Epson be granted prejudgment and post judgment interest; and

68. That Epson be awarded such further relief as the Court deems just and proper.

## **JURY TRIAL CLAIM**

Epson claims a trial by jury on all issues so triable.

Dated:  May 6, 2024

/s/ *Mallory Cooney*

Mallory Cooney
Florida Bar No. 125659
mallory.cooney@klgates.com
K&L Gates LLP
200 S Biscayne Blvd
Ste 3900
Miami, FL 33131
(305) 539-3300

*ATTORNEY FOR PLAINTIFF EPSON
AMERICA, INC.*

DocuSign Envelope ID: 4768A1D7-169A-42C8-981C-DC61AE4AED4B

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, Rodrigo Catalan as Group Product Manager for consumer projectors for Epson America, Inc., the Plaintiff herein, declare under penalty of perjury under the laws of the United States of America that factual allegations in the foregoing Verified Complaint are true and correct to the best of my knowledge or information and belief I understand that this verification is made subject to the penalties of perjury under 18 U.S.C. §1621 (relating to unsworn falsifications to authorities).

Dated this 1st day of May 2024.

DocuSigned by:

*Rodrigo Catalan*

77B7CA2E8511446...

Rodrigo Catalan

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.**      (a) **Plaintiffs-Defendants**.  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence**.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys**.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**     **Jurisdiction**.  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked. Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

**III.**    **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**     **Nature of Suit**.  Nature of Suit. Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**      **Origin**.  Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Refiled (3) Attach copy of Order for Dismissal of Previous case. Also complete VI.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

Remanded from Appellate Court. (8) Check this box if remanded from Appellate Court.

**VI.**     **Related/Refiled Cases**. This section of the JS 44 is used to reference related pending cases or re-filed cases. Insert the docket numbers and the corresponding judges name for such cases.

**VII.**    **Cause of Action**.  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity**. Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VIII.**   **Requested in Complaint**.  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.