IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

EPSON AMERICA, INC.,

     Plaintiff,

v.                                       Case No. 9:24-cv-80583-RLR

SAFE SPACE SCAN TECHNOLOGY LLC
d/b/a AWOL VISION

     Defendant.

_____

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Epson America, Inc. ("Epson") respectfully submits this Motion for a Preliminary Injunction that seeks to prohibit Defendant Safe Space Scan Technology LLC d/b/a AWOL Vision's ("Defendant" or "AWOL") from further engaging in unlawful false advertising.

## INTRODUCTION

AWOL has engaged in an ongoing campaign to purposefully deceive the public by grossly overstating the brightness of its projectors. Through independent testing, Epson has conclusively established that AWOL's LTV-2500 and LTV-3000 projectors produce a significantly lower brightness value than advertised by AWOL in the various places it offers projectors for sale. Although both consumers and Epson have made AWOL aware of its grossly-inaccurate lumen claims, AWOL refuses to remove its literally false advertisements from the marketplace and instead continues to create confusion for consumers. Blatantly false advertising of this magnitude calls for swift injunctive relief to protect consumers and to promote fair competition in the projector marketplace.

1

318300870.6

Epson therefore seeks a preliminary injunction: (1) prohibiting AWOL from engaging in further false or misleading advertising with respect to its products' lumen capacities; (2) ordering correction of all infringing AWOL product listings on Amazon and other webpages unless AWOL is able to substantiate its lumen claims through appropriate testing utilizing the internationally-published standard ISO 21118; and (3) ordering AWOL to send corrective notice to its retailers and customers disclosing that it made literally false claims regarding its products' lumen capacity.

## FACTS

The facts set forth in this section are supported by Epson's Complaint [ECF No. 1] and the exhibits hereto, including the Affidavit of Lumita Principal Karl Lang ("Lang Aff.") and the Affidavit of Epson Group Product Manager Rodrigo Catalan ("Catalan Aff."), attached hereto as Exhibits 1 and 2.

### A.      Portable Consumer Projectors

While traditionally associated with movie theaters, projectors have become an increasingly common video display product for consumers used in home, business, and educational settings. Compl. ¶ 8. Today, consumers use digital projectors in the same way as television or computer screens for their personal use. *Id*. ¶ 9. Digital projectors receive video signals from external devices, such as DVD players or computers, and "project" those signals onto a screen. *Id*. Consumers can purchase projectors in a variety of sizes ranging from the size of a cell phone to larger, permanently-mounted projectors for home theaters. *Id*. ¶ 10. Within a particular projector category, such as portable consumer projectors, the quality and corresponding price of a specific projector is largely determined by its resolution and light output. *Id*. ¶ 11. Projector light output is measured and described in lumens. *Id*. ¶ 12. The higher the lumen rating, the brighter the projector and, all else being equal, the more it will likely cost. *Id*.

318300870.6

The lumen rating for a projector is one of the most important and immediately recognizable projector features for consumers, and one that necessarily impacts consumer choice. Compl. ¶ 13. For this reason, lumen ratings are used to create sub-groups of portable consumer projectors, and serve as a measuring stick for consumers to compare projectors. *Id*. ¶ 14. Due to the importance of a projector's brightness levels, manufacturers prominently display and advertise a projector's lumen rating in advertising and on the product's packaging. *Id*. ¶ 15. In the case of online marketplaces, sellers list a projector's lumen rating in the product description, title, and even in the product name. *Id*. ¶ 16.

### B.   **Epson Projectors**

Epson is recognized throughout the United States and the world as a leading projector manufacturer. Compl. ¶ 17. As a market leader, Epson continues to set standards for image quality, performance, and innovation with its line of multimedia projectors. *Id*. ¶ 18. Epson's commitment to delivering quality products is recognized by the industry through various product awards and industry-wide recognition. *Id*. Epson has spent millions of dollars and significant time and effort in advertising, promoting, and developing its brand and establishing substantial goodwill in the portable consumer projector market. *Id*. ¶ 20. Epson prides itself on achieving the highest customer satisfaction ratings, accomplished in large part by using the most precise testing equipment and procedures available to ensure accurate product descriptions and specifications. *Id*. ¶ 19.

### C.   **AWOL's False Advertising of Its Projectors**

#### A.   *AWOL Projectors*

AWOL is a direct competitor of Epson in the portable consumer projector market. Compl. ¶ 21. AWOL sells and offers for sale projectors to consumers throughout the United States via its brick-and-mortar retail location, its own website www.awolvision.com, and various online

3

318300870.6

commerce sites including, but not limited to, Amazon.com and Walmart.com. *Id*. Defendant sells its projectors under various models including, but not limited to, the AWOL 4K 3D Triple Laser Projector LTV-2500 (the "LTV-2500") and the AWOL 4K 3D Triple Laser Projector LTV-3000 Pro (the "LTV-3000"). *Id*. ¶ 22. On AWOL's Amazon.com store, Defendant advertises the following brightness values for its LTV-2500 and LTV-3000 projector models:





*Id*. ¶ 23.

On Defendant's website www.awolvision.com Defendant advertises the following brightness values for its LTV-2500 projector model:



*Id.* ¶ 24.

On Defendant's Amazon.com product page, Defendant advertises the following brightness values for its LTV-2500 projector model:





*Id.* ¶ 25.

318300870.6

On Walmart.com, Defendant advertises the following brightness values for its LTV-2500 projector model:





*Id.* ¶ 26.

On Defendant's Amazon.com product page, Defendant advertises the following brightness values for its LTV-3000 projector model:



*Id.* ¶ 27.

On Defendant's website www.awolvision.com, Defendant advertises the following brightness values for its LTV-3000 projector model:



318300870.6







*Id.* ¶ 28.

On Walmart.com, Defendant advertises the following brightness values for its LTV-3000 projector model:





318300870.6

Product details                                                                    ⌃

LTV-3000 Pro

The Most Adaptable 4K 3D RBG Ultra Short Throw Laser Projector
AWOL VISION LTV-3000 Pro is the Most Adaptable 4K 3D RBG Ultra Short Throw Laser Projector. Powered with stunning
3000 Peak Lumens, it presents remarkable clarity in most lighting conditions day or night. With Triple Laser (without Color
Wheel) Technology, 4K UHD with Dolby Vision, HDR10+ and 3D Available, Smart Room Ready, LTV-3000 Pro presents an
unmatched sharp and colorful image. Coupled with exceptional audio immersion technology with Dolby Atmos, LTV-3000
Pro brings you an immersive 80"-150" home theater experience for the whole day.

Product Features:
3000 Peak Lumens
Triple Laser (RGB),Color Gamut
107% Rec 2020 or 147% DCI-P3
Dolby Vision Ready, Active
3D Capability
Ready to Stream
Smart Room Ready
Turbo Game mode
24 FPS for Cinema Purists
36W Dolby Atmos Sound with Earc
Enhanced Black Level
4K Ultra HD with HDR10+
Learn More Features in [About the brand]

*Id.* ¶ 29.[1]

As shown above, each of the above brightness values is prominently displayed in both the projectors' listing page titles as well as in multiple places throughout the projectors' listing pages. Compl. ¶ 30. Defendant makes these statements recognizing the importance of brightness to a consumer. *Id.* ¶ 31. Throughout each of its products' pages on various websites, AWOL touts the brightness performance of its projectors in both the product's title and in its description of the product's performance. *Id.* ¶ 32. In order to gain initial traction in the United States projector

---

[1] As shown above, in some advertisements Defendant states a value of "2600 lumens" for its LTV-2500 projector while in other instances is states "2600 peak lumens" for the same model. Similarly, in some advertisements Defendant states a value of "3000 lumens" for its LTV-30000 projector, while in other instances it lists a value of "3000 peak lumens" for the same model.

318300870.6

marketplace, AWOL is purposefully and deceptively inflating the brightness specification of its projectors. *Id*. 33.

### B.   *Independent Testing*

Epson commissioned Lumita, Inc. ("Lumita"), an independent technology consulting company that specializes in product testing involving light and color measurement, to test the actual brightness of a random sampling of brand new AWOL projectors purchased from various websites where AWOL offers its products for sale. *See,* Lang Aff. ¶¶ 1-5. Lumita tested several of Defendant's LTV-2500 and LTV-3000 projectors. *Id*. ¶ 5; Compl. ¶ 30. Of the AWOL projectors tested, each projector tested significantly below its advertised brightness value. *See,* Lang Aff. ¶¶ 13-17 and Exs. A and B.

AWOL represents that the LTV-2500 has a 2600-lumen rating. *See* Compl ¶¶ 23-26. Of the five brand new LTV-2500 projectors purchased from online retailers, the average light output was 1634 lumens. Lang Aff. Ex. A at 5. The five projectors displayed a maximum light output of between 1610 and 1682 lumens. Lang Aff. ¶ 13. Were Lumita to assign the model LTV-2500 a light output for advertising pursuant to the internationally accepted ISO 21118 specifications, it would be 1700 lumens. Lang Aff. ¶ 16. Accordingly, the LTV-2500's actual light output is materially smaller than the 2600 lumens AWOL represents to consumers in its advertising and product description.

Lumita also tested five different LTV-3000 units, a model that AWOL represents as having a 3000-lumen rating. Lang Aff. ¶ 7, Ex. B at 1; Compl ¶¶ 23-26. The results showed that on average, the projectors had an output of 1758 lumens, with no individual projector testing above 1839, and some registering a value as low as 1666 lumens. Lang Aff. ¶ 14, Ex. B at 1, 5. Were Lumita to assign the model LTV-3000 a light output for advertising pursuant to the ISO 21118

specifications, it would be 1800 lumens. Lang Aff. ¶ 17. As with the LTV-2500, Lumita has demonstrated that AWOL grossly misrepresents the lumen value of its LTV-3000 projector to consumers.

Despite multiple requests from Epson, AWOL has not provided any prior substantiation for the brightness claims made by AWOL. Instead, AWOL has only provided its own *internal* test data for the LTV-2500, which, remarkably, do not support the brightness value that AWOL advertises. Indeed, none of AWOL's own testing results displayed a value above 2105 lumen, well below the 2600 claimed by AWOL.

## C. *AWOL Deceives Customers*

Defendant's purposeful inflation of the brightness specifications of its projectors has caused significant confusion in the marketplace. Compl. ¶¶ 35-36. Beyond the independent testing, which conclusively establishes that Defendant's lumen representations are literally false, AWOL projector purchasers throughout the United States have voiced serious concerns regarding AWOL's projector brightness representations, in many cases calling AWOL's claims wholly false and unsupported. *Id*. For example, one recent AWOL customer left the following feedback on Defendant's Amazon.com model LTV-2500 projector page after making a verified purchase from the AWOL storefront:

318300870.6



Compl. ¶ 36.

Purchasers of any of AWOL's projectors are likely to be, and have actually been, misled and deceived by AWOL's literally false product labeling, descriptions, and advertisements. *Id*. Consumers expect the represented product specifications to be accurate for AWOL's projectors, as they base their purchasing decisions in large part on these representations. *Id*. ¶ 37. In fact, consumers that purchase Defendant's projectors receive projectors with drastically lower performance outputs than those represented and advertised by AWOL. *Id.*

### D. *AWOL's False Advertising Harms Epson*

Defendant's false and misleading product labels, descriptions, and advertisements are damaging to Epson's reputation and goodwill and are also damaging to the consuming public. Compl. ¶ 38. These false and misleading representations are designed to entice consumers to purchase AWOL projectors over Epson's products. *Id.*

14

318300870.6

Moreover, the natural, probable, and foreseeable result of AWOL's wrongful conduct causes confusion, deception, and mistake *in the consumer projector marketplace as a whole*. *Id*. ¶ 39, *see also* Catalan Aff. ¶ 18. By means of example, after having a poor experience with AWOL's projector with an improperly inflated lumen value of "3000 lumen," the consuming public is less likely to purchase a projector with a lumen rating of 3000 lumens as consumers will be unaware that AWOL's "3000 lumen" projector is not representative of the performance of a true 3000 lumen projector. Compl. ¶ 40. Therefore, given the poor brightness of the projector, a consumer will likely purchase a TV rather than a projector. This causes irreparable harm to Epson as well as to the entire portable projector marketplace. *Id*.

Epson is informed and believes that AWOL's wrongful conduct has resulted in increased sales and market share of AWOL's projectors while hindering the sales and market share of Epson's projectors and damaging Epson's goodwill. *Id*. ¶ 41. Epson has sustained and will continue to sustain irreparable damages as a result of AWOL's wrongful conduct, unless enjoined. *Id*. ¶ 42.

## ARGUMENT

This Court has discretion to issue a preliminary injunction in order to protect both consumers and Epson from irreparable injury and to preserve its power as trial court to render a meaningful decision on the merits. *Bloedorn v. Grube,* 631 F.3d 1218, 1229 (11th Cir. 2011). A district court may grant a preliminary injunction if the moving party shows that

(1) it has a substantial likelihood of success on the merits;

(2) irreparable injury will be suffered unless the injunction issues;

(3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and

(4) if used, the injunction would not be adverse to the public interest.

318300870.6

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 (11th Cir. 2008). Epson has set forth sufficient facts and law to meet each of the requirements. Additionally, This Court would not be the first to issue an injunction based on the advertising of falsely-inflated lumen values: a District Court in the District of South Carolina has recently granted the same Epson injunctive relief sought herein based upon a nearly identical set of facts. *See*, *Epson America, Inc. v. USA111, Inc.*, 259 F.Supp.3d 387 (D.S.C. 2017).

## I.   EPSON IS LIKELY TO SUCCEED ON ITS CLAIMS

The first question is whether Epson is likely to succeed on the merits. *Axiom Worldwide*, 522 F.3d at 1217. Epson need not establish "actual success" – only a "likelihood of success" at trial. *Amoco Production Co. v. Gambell*, 480 U.S. 531, 546 n.12 (1987).

The Lanham Act prohibits the "false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B); *see Axiom Worldwide*, 522 F.3d at 1224. In order to assert a false advertising claim under the Lanham Act, a plaintiff must establish that:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product;
>
> (2) the misrepresentation is material, in that it is likely to influence the purchasing decision;
>
> (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience;
>
> (4) the defendant placed the false or misleading statement in interstate commerce; and

318300870.6

(5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Id.* (quoting *Johnson Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.,* 299 F.3d 1242, 1246 (11th Cir. 2002)).

Epson satisfies all of these elements.[2]

### A. AWOL Has Made Literally False Statements Regarding Characteristics of Its Projectors

The first element of a false advertising claim is "satisfied if the challenged advertisement is literally false, or if the challenged advertisement is literally true, but misleading." *1-800 Contacts,* 299 F.3d at 1247. Here, AWOL has misrepresented the lumen outputs of its projectors; a factual, measurable characteristic. Independent testing conducted by Lumita has demonstrated that Defendant's LTV-2500 and LTV-3000 projectors produce significantly lower brightness levels than the values advertised across all of AWOL's retail platforms. This is sufficient at this stage of the proceedings, when the Court's only inquiry is whether there is a likelihood of success on the merits.

Equally import is the fact that AWOL lacks any prior substantiation for its brightness claims. As recently stated by the FTC, "[t]o borrow a phrase the Supreme Court coined in a different context, if there is a 'fixed star' in the consumer protection constellation, it's the advertising substantiation doctrine. In place for decades and explained in a 1984 Policy Statement,

---

[2] The likelihood of success of Epson's Lanham Act (false advertising) claim (Count I) will determine the likelihood of success of its state law claim (Count II), because the elements and proof required are identical for both claims. *See e.g., Nat. Answers v. Smithkline Beecham*, 529 F.3d 1325, 1333 (11th Cir. 2008) ("claim for a violation of the Florida Deceptive and Unfair Trade Practices Act rises or falls on the success of its trademark infringement and false advertising claims."). *See also Sensormatic Elec. Corp. v. TAG Co. US, LLC*, 632 F. Supp. 2d 1147, 1193 (S.D. Fla. 2008) *aff'd in part sub nom. Sensormatic Elec.s, LLC v. Kahle*, 367 F. App'x 143 (Fed. Cir. 2010) (a preliminary injunction is an appropriate remedy for violating FDUTPA). Accordingly, for purposes of this Motion, there is no need to examine Epson's state law claim independently.

the underlying legal requirement is clear: companies must have a reasonable basis to support their advertising claims before those claims are disseminated."[3] Courts have held that advertising claims that lack any evidentiary support are *per se* false. *See e.g. Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 590 (3d Cir. 2002); *Pharmacia Corp. v. GlasxoSmithKline Consumer Healthcare, LP*, 292 F.Supp. 2d 594, 607 (D.N.J. 2003); *but see Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A.*, No. 18-80311-CIV, 2020 WL 5514158 (S.D. Fla. July 31, 2020) (declining to follow *Novartis* at summary judgment stage). Here, as discussed above, AWOL lacked any prior substantiation whatsoever for its claim of 2600 lumens for its LTV-2500 projector and its claim of 3000 lumens for its LTV-3000 projector. Its lack of prior substantiation can separately and independently for the basis for the claims' falsity.

### B. Because AWOL's Claims Are Literally False, Epson Is Not Required to Establish Consumer Deception

Having demonstrated that AWOL has made literally false representations of fact that influence consumer purchasing, Epson need not demonstrate actual consumer deception in order to obtain injunctive relief. *See 1-800 Contacts,* 299 F.3d at 1247. ("Once a court deems an advertisement to be literally false, the movant need not present evidence of consumer deception."); *Osmose, Inc. v. Viance*, LLC, 612 F.3d 1298 (11th Cir. 2010) (same); *Marksman Sec. Corp. v. P.G. Sec., Inc.*, No. 19-62467-CIV, 2021 WL 6498217, at *14 (S.D. Fla. Oct. 12, 2021) (applying criteria to false online reviews).

Even though it is not required, Epson can easily demonstrate consumer confusion with regards to AWOL's literally false lumen claims. Even a cursory review of the negative

---

[3] *See* Lesley Fair, *Advertising without proper proof can prove costly under new Notice of Penalty Offenses*, Federal Trade Commission: Business Blog (Apr. 13, 2023), http://www.ftc.gov/business-guidance/blog/2023/04/advertising-without-proper-proof-can-prove-costly-under-new-notice-penalty-offenses.

Amazon.com customer feedback quickly and conclusively demonstrates that consumers are being duped into purchasing these projectors based upon AWOL's false brightness claims. *See* Compl. ¶ 36 and screenshot at 14 *supra*.

### C. AWOL's False Statements Are Material

In order to establish materiality, the plaintiff must demonstrate that "the defendant's deception is likely to influence the purchasing decision." *1-800 Contacts,* 299 F.3d at 1250 (internal quotation marks omitted). A plaintiff may demonstrate this by showing that "the defendants misrepresented an inherent quality or characteristic of the product." *Id.* (internal quotation marks omitted). Projector brightness is a material characteristic, inherent to the quality of the product; consumers readily identify projectors based upon this measurement. It is one of the most important characteristics informing consumer choice when selecting a portable projector. Compl. ¶¶ 13, 44. As succinctly stated by the district court in granting a similar injunction in *Epson America, Inc. v. USA111, Inc.*:

> Brightness is one characteristic customers rely on in determining what projector may best fit their needs. Projectors are often listed and compared on commercial websites by their lumen output. Therefore, statements about lumen output are "likely to influence the purchasing decision" and are material.

259 F.Supp.3d at 393.

The facts of this case are no different. As shown in the complaint, AWOL prominently displays the brightness in lumens for projectors in product descriptions, labels, names, and advertising. *Id*. ¶ 15. Indeed, AWOL frequently places the product's lumens rating in the title of the product page on third-party websites. *See, e.g.*, Compl. ¶¶ 23-29 and screenshots at 6-10, *supra*.

In representing projector lumen outputs that are significantly higher than actual outputs, AWOL literally misrepresents material factual information to consumers. As an indication of the importance of lumen outputs to consumers, AWOL has included advertised lumen ratings directly

318300870.6

in its product names for the majority of its portable consumer projectors. *See* Compl. ¶¶ 23-29 and screenshots at 6-10, *supra*. As a further indication of the importance of brightness to consumers, similar projectors on Amazon.com are compared by lumen output and searchable by "Video Projector Image Brightness," which lists several different lumen ranges:





318300870.6

Lastly, the negative feedback left by consumers concerning AWOL's false lumen claims again demonstrates that lumens are a quality in projectors that consumers deem important. *See* Compl. ¶ 36 and screenshot at 14 *supra*. Defendant's false lumen claims were so important to these duped consumers that they took the time to log into their Amazon accounts and write negative reviews warning other consumers of AWOL's false lumen claims. Given all of the above, there is no doubt that statements regarding lumens are material to purchasers of projectors.

## D. AWOL's Claims Were Made In Interstate Commerce

The Lanham Act defines "commerce" as "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127; *see also Planetary Motion v. Techplosion,* 261 F.3d 1188, 1194 (11th Cir. 2001) ("Because Congress's authority under the Commerce Clause extends to activity that substantially affects interstate commerce, the Lanham Act's definition of commerce [includes] all commerce which may lawfully be regulated by Congress." (internal citation and quotations omitted)). For decades, courts have held that "distribution of [products] to end-users over the internet satisfies the use in commerce" predicate. *Planetary Motion*, 261 F.3d at 1194; *Lancaster v. Bottle Club, LLC,* No. 8:17-CV-634-T-33JSS, 2017 WL 3008434, at *2 (M.D. Fla. July 14, 2017) (recognizing that use of the internet to advertise to out-of-state individuals amounts to use in interstate commerce); *Petmed Express, Inc. v. Medpets.com, Inc.*, 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004) (finding that "[i]n establishing a website on the Internet," defendants had participated in interstate commerce). It is undisputed that in selling and advertising its projectors to consumers throughout the United States through various online marketplaces including www.awolvision.com Amazon.com, and Walmart.com, AWOL's false representations have been made in interstate commerce, thus satisfying the fourth element of the Lanham Act analysis.

318300870.6

**E. Epson Has Been And Will Continue To Be Injured By AWOL's False Advertisements**

To satisfy the final element of a false advertising claim under the Lanham Act, Epson must show that it has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products. *See 1-800 Contacts, Inc.,* 299 F.3d at 1246. This element of a Lanham Act claim necessarily overlaps with the irreparable harm analysis and is thus addressed in the following section.

**II.    EPSON WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF A PRELIMINARY INJUNCTION**

The second prong required for a court to provide injunctive relief calls for a showing by a plaintiff that it has been – or is likely to be – injured as a result of the false advertising in question. *1-800 Contacts,* 299 F.3d at 1247. Because Epson will has demonstrated a likelihood of its claims' success on the merits, Epson is entitled by law to a rebuttable presumption that it has suffered irreparable harm due to AWOL's false advertising. Section 34 of the Lanham Act provides:

> "A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order."

15 U.S.C. 1116(a).[4] *See, also, e.g. Hill v. Dinges*, 3:21-CV-165-MMH-PDB, 2021 WL 4935649 at *11 (M.D. Fla. Sep. 13, 2021) *report and recommendation adopted*, No. 3:21-CV-165-MMH-PDB, 2021 WL 4520503 (M.D. Fla. Oct. 4, 2021) (applying presumption to grant injunctive relief). AWOL will not be able to rebut the presumption as the facts make it clear that absent an injunction, Epson will continue to suffer the loss of current and potential customers and damage to its goodwill as a leader in the personal projector industry that legitimately advertises its products' lumen levels.

---

[4] Congress added the rebuttable presumption through the Trademark Modernization Act of 2020, which was enacted as part of the Consolidated Appropriations Act of 2021. *See* Pub. L. No. 116-260, § 226, 134 Stat 1182 (2020).

318300870.6

The focus of Section 43 of the Lanham Act "is on protecting commercial interests [that] have been harmed by a competitor's false advertising, and in secur[ing] to the business community the advantages of reputation and good will by preventing their diversion from those who have created them to those who have not." *Phoenix of Broward, Inc. v. McDonald's Corp.*, 489 F.3d 1156, 1168 (11th Cir. 2007) (internal quotations and citations omitted). Courts in this Circuit have held that misleading advertisements can cause irreparable harm related to the loss of customers, declining sales, and the loss of good will. *See, e.g., BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Srvs., LLC,* 425 F.3d 964, 970 (11th Cir. 2005) ("[T]he loss of customers and goodwill is an irreparable injury."); *TracFone Wireless, Inc. v. Adams*, 98 F. Supp. 3d 1243, 1251 (S.D. Fla. 2015) (proof of injury can come in the form of direct diversion of sales from a plaintiff to defendant or a loss of good will associated with the product); *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.,* 915 F. Supp. 360, 364 (S.D. Fla. 1996), *aff'd sub nom. Tire Kingdom v. Morgan Tire & Auto*, 136 F.3d 139 (11th Cir. 1998) (same).

By falsely advertising a key specification of a competing projector, AWOL not only diverts sales away from Epson, it causes irreparable harm to the entire projector industry. *See* Catalan Aff. ¶¶ 12, 18. Consumers do not readily understand the difference between 10, 100, 1000, or 10,000 lumens in the same way that consumers understand the weight of a product or the miles per gallon of a vehicle. *Id*. ¶ 13. The latter measurements are based on established, recognized standards widely used in everyday life.

Thus, when a retailer falsely advertises a "3000 lumen" projector, the consumer may not realize that the projector does not, in fact, produce 3000 lumens. *Id*. ¶ 15. Instead, the consumer may know only that the "3000 lumens" projector is not bright enough for their particular use case. *Id*. ¶ 14. So, the consumer may seek to purchase, for example, a 5000-lumen projector. However,

as the lumens go up on a projector, so does the cost. *Id*. ¶ 7. Thus, a consumer may see the cost of a true 5000-lumen projector—or even a correctly-advertised 3000-lumen projector—deem it too high, and instead abandon the projector category entirely by purchasing a television. *Id*. ¶ 16. Alternatively, a consumer may see that AWOL is able to provide a projector boasting "3000 lumens" for a lower price than another retailer and purchase that item, not understanding that the higher-priced competitor product *actually* produces the lumens advertised, necessitating the increased cost. *Id*. ¶ 17. The confusion caused by AWOL's false advertising of the brightness of its projectors therefore not only harms Epson and the consumer, but also harms the entirety of the projector marketplace, including competitors that advertise lumens in accordance with internationally recognized and accepted standards. *Id*. ¶ 18. This is exactly the type of harm and confusion that Lanham Act was designed to prevent.

Moreover, limiting Epson to monetary compensation for its injuries would be insufficient since it is nearly impossible to fully and accurately determine the impact AWOL's conduct will have on the projector marketplace, Epson's current and potential customers, business opportunities, profit, reputation and goodwill amongst consumers of projectors. *See Zimmerman v. D.C.A. at Welleby, Inc.*, 505 So. 2d 1371, 1373 (Fla. 4th DCA 1987) (applying Florida law to find irreparable harm "because of the difficulty in determining how many sales were lost and what the profit on each such lost sale would have been").

It is undisputed that AWOL competes directly with Epson in the portable consumer projector market. While literally false statements regarding material product characteristics are misleading as a matter of law, feedback unequivocally shows that Defendant's false statements regarding its projectors' brightness levels have misled consumers into purchasing its projectors rather than Epson's projectors. *See* Compl. ¶ 36 and screenshot at 14 *supra*. This proof of consumer

deception alone is sufficient for a showing of irreparable harm. *See Ferrellgas Partners, L.P. v. Barrow,* 143 F. App'x 180, 190 (11th Cir. 2005) ("Irreparable injury can also be based upon the possibility of confusion."); *Edge Systems LLC v. Aguila*, 186 F.Supp.3d 1330, 1362 (S.D. Fla. 2016) (irreparable harm element satisfied by existence of consumer confusion). Any one of these pieces of evidence alone would be sufficient for a finding of irreparable harm; taken together, the evidence of irreparable harm is clearly established.

## III. THE BALANCE OF EQUITIES FAVORS EPSON; A PRELIMINARY INJUNCTION WOULD NOT UNDULY HARM AWOL

The third injunctive element, the balance of equities, tilts heavily in favor of Epson. As shown, Epson has invested millions of dollars and significant time and effort in advertising, promoting and developing its brand within the portable consumer projector market without the use of false advertising. AWOL, on the other hand, has been proven to make wildly false claims about its products' lumens in an effort to increase its sales. In falsely advertising its products, AWOL is solely responsible for any harm that may result from an injunction that calls for AWOL to stop deceiving the consuming public. *See, e.g.*, *Campero USA Corp. v. PCNY, LLC.*, No. 11-21094-CIV, 2011 WL 13319576, at *8 (S.D. Fla. Sept. 8, 2011) ("In this case, any harm suffered by Defendants will have been occasioned by their own actions."). Under these circumstances, the balance of hardships is overwhelmingly in Epson's favor. While the injury to Epson caused by an inability to compete with inflated numbers is immeasurable and irreparable, the only "harm" to AWOL will be the take down of *literally false advertisements of its lumen rating*. AWOL will not be required to remake product packaging, remove physical signage, or undertake any other labor-intensive exercises in order to comply with an injunction issued by this Court. Rather, AWOL would simply need to revise online postings on Amazon, Walmart, and their personal retail website with the true value of their lumen output – an act that can be accomplished in a few hours if not a

25

few minutes. It defies comprehension to suggest there is any real risk of harm to AWOL from this relief—*i.e.*, removing or preventing literally false statements to consumers online. Thus, the equities strongly tip in favor of granting an injunction.

## IV. THE PUBLIC INTEREST WOULD BE ENHANCED BY A PRELIMINARY INJUNCTION

The Eleventh Circuit recognizes a strong public interest in protecting the right of the public not to be deceived. "[T]he public interest is served by preventing customer confusion or deception." *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1321 (11th Cir. 2010). *See also Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 703 F.Supp.2d 1307, 1316 (S.D. Fla. 2010) (citing *SunAmerica Corp. v. Sun Life Assurance Co. of Can.*, 77 F.3d, 1325, 1334 (11th Cir. 1996) ("The public interest is served by eliminating confusion in the marketplace."). It necessarily follows that stopping deceptive conduct, such as the false advertising campaign perpetuated by AWOL, is in the public interest.

There is no question that false advertising is likely to deceive the consuming public. Where, as here, AWOL makes literally false representations, the consuming public *is* deceived. Defendant's false statements have led consumers to believe that they can purchase a projector with a certain brightness rating for a fraction of the cost of a competing projector. The public interest is best served by ensuring manufacturers accurately represent their products. Accordingly, the Court should enjoin AWOL from making further false statements and further order that AWOL provide the consuming public with accurate information.

## V. AN INJUNCTION FROM THIS COURT WOULD BE IN LINE WITH PRECEDENT FROM OTHER CIRCUITS

In addition to the foregoing, Epson points the Court to prior precedent that is exactly on point. In *Epson America, Inc. v. USA111, Inc.*, the central allegation was that the brand "iRULU's claimed lumen rating is vastly overstated in advertisements and has resulted in injury to Epson."

318300870.6

259 F.Supp.3d 387, 387 (D.S.C. 2017). The South Carolina court granted Epson injunctive relief requiring iRULU to revise all existing advertisements to list their lumen rating either as "undetermined" or as the rating established by Epson's testing until such a time as the court approved the results of an independent third-party test. *Id*. at 395. Epson was found to have been irreparably harmed by the false lumen ratings listed on Amazon, and the court acted swiftly to prevent further confusion in the marketplace. This Court should, for all of the reasons stated herein, make the same findings in this case, and prevent further harm to Epson and consumers from AWOL's literally false advertisements.

**VI.     THE COURT SHOULD REQUIRE AWOL TO ISSUE CORRECTIVE NOTICES**

Courts may additionally require a defendant to issue corrective notices and place advertising as necessary to cure the misperception in the marketplace that its false statements created. *See, e.g., Linotype Co. v. Varityper, Inc.*, 1989 WL 94338 (S.D.N.Y. Aug. 4, 1989) (requiring corrective advertising in preliminary injunction on false advertising claim); *Ames Publishing Co. v. Walker–Davis Publications, Inc.,* 372 F.Supp. 1 (E.D.Pa.1974) (corrective advertising may be ordered where appropriate); *Levitt Corp. v. Levitt*, 593 F.2d 463, 467 (2d Cir. 1979) (upholding order for corrective advertising in Florida market to make plaintiff whole).

AWOL should be required to do so here, both to remedy the confusion that it has undoubtedly caused in the marketplace, and to ensure that Defendant does not take further advantage of its false statements. The Court therefore should order AWOL to send corrective notices to retailers and customers explaining the nature of AWOL's actions and the substance of the Court's injunction.

**VII.    EPSON SHOULD NOT BE REQUIRED TO POST A BOND**

Federal Rule of Civil Procedure 65 states that a bond must be posted whenever the court issues a preliminary injunction. However, "the amount of security required by the rule is a matter

27

318300870.6

within the discretion of the trial court . . . [, and] the court may elect to require no security at all." *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Svcs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (international quotation marks and citations omitted). Where companies have sufficient financial resources to pay any damages awarded, courts in this Circuit have been satisfied that no bond is required. *See e.g.*, *Tim Hortons U.S., Inc. v. Tims Milner LLC,* No. 18-cv-24152-GAYLES/MCALILEY, 2019 WL 2515006 at *7 (S.D. Fla. June 17, 2019); *CITGO Petroleum Corp. v. Mid-State Energy, Inc.*, No. 8:12-cv-876-T-33MAP, 2012 WL1405710, at *2 (M.D. Fla. Apr. 23, 2012) (enjoining defendants and noting that the plaintiff corporation was not required to post a bond due to its size, financial resources, and the court's confidence that it would be able to satisfy any future judgment against it); *Burger King Corp. v. Duckrey*, 851 F. Supp. 2d 1325, 1332 (S.D. Fla. 2011) (holding that the plaintiff did not have to post a bond based on its financial status). Epson is an international brand and a sizable company with the resources to make any payment ordered by this Court. Accordingly, Epson requests this Court issue a preliminary injunction without requiring a bond.

## RELIEF REQUESTED

For these reasons, Epson respectfully requests that its Motion for Preliminary Injunction should be granted: (1) prohibiting AWOL from engaging in further false or misleading advertising with respect to its products' lumen capacities; and (2) ordering AWOL to send corrective notice to its retailers and customers disclosing that it made literally false claims regarding its products' lumen capacity.

318300870.6

Dated: May 24, 2024                                          Respectfully Submitted,

                                          /s/ *Mallory Cooney*
                                          Mallory Cooney
                                          Florida Bar No. 125659
                                          mallory.cooney@klgates.com
                                          K&L Gates LLP
                                          200 S Biscayne Blvd
                                          Ste 3900
                                          Miami, FL 33131
                                          (305) 539-3300
                                          *ATTORNEY FOR PLAINTIFF EPSON*
                                          *AMERICA, INC.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing on this 24th day of May 2024.

                                          /s/ *Mallory Cooney*
                                          Mallory Cooney

## SERVICE LIST

Safe Space Scan Technology LLC d/b/a AWOL Vision
c/o Zhenhai Zhao, Registered Agent
9169 W. Atlantic Avenue, Suite 118
Delray Beach, FL 33446

318300870.6