**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

EPSON AMERICA, INC.,

       Plaintiff,

v.                                       Case No. 9:24-cv-80583-RLR

SAFE SPACE SCAN TECHNOLOGY LLC
d/b/a AWOL VISION

       Defendant.

_____

**PLAINTIFF EPSON AMERICA, INC.'S OPPOSITION TO DEFENDANT'S
<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 3

FACTUAL BACKGROUND ............................................................................................... 3

A.     PORTABLE CONSUMER PROJECTORS ................................................. 3

B.     EPSON'S PROJECTORS ............................................................................ 4

C.     AWOL'S FALSE ADVERTISING OF ITS PROJECTORS ...................... 4

        1.     AWOL Projectors .......................................................................... 4

        2.     Independent Testing ...................................................................... 5

        3.     AWOL's Advertisements Deceive Consumers ................................ 5

        4.     AWOL's False Advertising Harms Epson ..................................... 5

LEGAL STANDARD ........................................................................................................... 6

ARGUMENT ........................................................................................................................ 7

A.     EPSON'S COMPLAINT IS NOT SUBJECT TO THE HEIGHTENED
        PLEADING STANDARD OF RULE 9(B). ................................................. 7

B.     EVEN IF RULE 9(B) APPLIED, EPSON'S ALLEGATIONS ARE PLED WITH
        THE REQUISITE SPECIFICITY ................................................................ 8

C.     EPSON'S LANHAM ACT CAUSE OF ACTION SATISFIES THE REQUIRED
        ELEMENTS ................................................................................................ 11

        1.     Epson Adequately Pleads That Defendant's Advertisements Are Literally
                False ............................................................................................ 13

        2.     Although Not Required Because Defendant's Advertisements Are
                Literally False, Epson Adequately Pleads That Defendant's False
                Statements Cause Consumer Confusion ........................................ 14

        3.     Epson Adequately Pleads That Defendant's False Statements Are Material ...... 15

        4.     Epson Adequately Pleads That Defendant's False Statements Were Made
                in Interstate Commerce ................................................................ 15

        5.     Epson Adequately Pleads It Has Been and Will Continue to Be Injured by
                AWOL's False Advertisements ..................................................... 16

D.     MOST OF AWOL'S ARGUMENT CANNOT BE CONSIDERED AT ALL
        BECAUSE IT IS OUTSIDE THE FOUR CORNERS OF THE COMPLAINT ............. 16

CONCLUSION ..................................................................................................................... 19

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*3Lions Publ'g, Inc. v. Interactive Media Corp.*,
  389 F. Supp. 3d 1031 (M.D. Fla. 2019)....................................................................................5

*Advisors Excel, LLC v. Scranton*,
  No. 14-60558-CIV-MIDDLEBROOKS, 2014 WL 12543802 (S.D. Fla. Sept. 15, 2014)........6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................................4, 6

*Bluegreen Vacations Unlimited, Inc. v. Timeshare Laws. P.A.*,
  No. 20-24681-Civ-Scola, 2021 WL 3552175 (S.D. Fla. Aug. 11, 2021) ......................5, 6, 10

*de Cortees v. Brickell Inv. Realty, LLC*,
  546 F. Supp. 3d 1332 (S.D. Fla. July 1, 2021)....................................................................7, 9

*Diamond Resorts Int'l, Inc. v. Aaronson*,
  371 F. Supp. 3d 1088 (M.D. Fla. 2019)..................................................................................10

*Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*,
  797 F.3d 1248 (11th Cir. 2015) ..............................................................................................13

*Epson Am., Inc. v. AuKing*,
  No. 1:23-113670-LTS, 2023 WL 11700166 (D. Mass. Jan. 3, 2024) ...............................10, 13

*Epson Am., Inc. v. Shenzhen Rongchuang Youpin Elec. Com. Co., Ltd.*,
  1:24-cv-10563-LTS (D. Mass. June 28, 2024) .......................................................................10

*Epson Am., Inc. v. Sunvalleytek Int'l, Inc.*,
  No. 8:23-cv-00735-JVS-ADS, 2024 WL 2104600 (C.D. Cal. Apr. 22, 2024)........................9

*Epson Am., Inc. v. USA111, Inc.*,
  259 F. Supp. 3d 387 (D.S.C. 2017).........................................................................................10

*Grossman v. Nationsbank, N.A.*,
  225 F.3d 1228 (11th Cir. 2000) .................................................................................................4

*Hi-Tech Pharmas., Inc. v. HBS Int'l Corp.*,
  910 F.3d 1186 (11th Cir. 2018) ....................................................................................9, 11, 12

*Itamar Med., Ltd. v. Ectosense NV*,
  No. 20-60719-CIV-DIMITROULEAS, 2021 WL 12095119 (S.D. Fla. Dec. 29, 2021) .........4

*Johnson Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
  299 F.3d 1242 (11th Cir. 2002) ...............................................................11, 12, 13, 14

*Johnson v. City of Atlanta*,
  107 F.4th 1292 (11th Cir. 2024) ..................................................................................15

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*,
  522 F.3d 1211 (11th Cir. 2008) ...................................................................................12

*Nat. Answers v. Smithkline Beecham*,
  529 F.3d 1325 (11th Cir. 2008) ...................................................................................10

*Planetary Motion v. Techplosion*,
  261 F.3d 1188 (11th Cir. 2001) ...................................................................................13

*Reed v. Royal Caribbean Cruises Ltd.*,
  No. 20-CV-24979-RAR, 2022 WL 3027906 (S.D. Fla. Aug. 1, 2022) (J. Ruiz) ...................15

*SouthState Bank, N.A. v. Qoins Techs., Inc.*,
  2024 WL 911075 (N.D. Ga. Mar. 1, 2024)....................................................................14

*Thermolife Int'l LLC v. Vital Pharm. Inc.*,
  No. 19-cv-61380-BLOOM/Valle, 2019 WL 4954622 (S.D. Fla. Oct. 8, 2019)......................5

*TocMail Inc. v. Microsoft Corp.*,
  No. 20-60416-CIV-SMITH, 2020 WL 9210739 (S.D. Fla. Nov. 6, 2020) .............................5

*Total Compliance Network, Inc. v. Total Compliance Servs., LLC*,
  No. 17-21038-cv-WILLIAMS/TORRES, 2018 WL 446065 (S.D. Fla. June 8, 2018).............6

*USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*,
  No. 15-CIV-80352-BLOOM/Valle, 2016 WL 4254257 (S.D. Fla. Feb. 16, 2016) ....5, 6, 7, 10

*Wilchombe v. TeeVee Toons, Inc.*,
  555 F.3d 949 (11th Cir. 2009) .....................................................................................15

**Statutes**

Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* ................ *passim*

Lanham Act, 15 U.S.C. §§ 1051, *et seq.*................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 8 ....................................................................................... *passim*

Fed. R. Civ. P. 9(b) ..................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)...........................................................................................4, 5, 17

Plaintiff Epson America, Inc. ("**Epson**") respectfully submits this Memorandum in Opposition to Defendant Safe Space Scan Technology LLC d/b/a AWOL Vision's ("**Defendant** or "**AWOL**") Motion to Dismiss Plaintiff's Complaint [DE 33] (the "**Motion**").

## INTRODUCTION

Defendant's Motion concerns a competitor entity's futile effort to dodge well-pled claims arising from AWOL's deliberate and misleading representations concerning the light output capabilities of its projectors. The Court should deny Defendant's Motion as Epson's Complaint is more than sufficient to meet the requisite pleading standards for each of its causes of action and certainly apprises Defendant of Epson's claims.

Defendant's Motion makes two central flawed, and ultimately unsuccessful, arguments: (1) the Complaint is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9; and (2) Epson's allegations are insufficiently pled to support its counts. The Motion fails for a number of reasons. First, despite AWOL's suggestion to the contrary, the Eleventh Circuit has *not* established that Rule 9(b) applies to false advertising or Lanham Act claims, and courts within this Circuit and specifically within this District have declined to apply Rule 9(b)'s heightened pleading standard to similar counts. Second, in this context, the Rule 9(b) heightened pleading standard also does not apply to Epson's FDUTPA claim, as courts in this Circuit have found that the FDUTPA claim itself is a unique cause of action, which often places it outside of Rule 9(b). Third, notwithstanding the fact that Epson's claims are ***not*** subject to Rule 9(b), the allegations are pled with the requisite specificity to meet both Rule 8 and the Rule 9(b) heightened standard. Fourth, a majority of Defendant's argument is entirely outside the four corners of the Complaint, which cannot be considered at this stage of the case.

For these reasons, and as further detailed below, AWOL's arguments fail as a matter of law and the Court should deny Defendant's Motion in its entirety.

## FACTUAL BACKGROUND

The facts set forth in this section are supported by Epson's Complaint [DE 1].

### A.   Portable Consumer Projectors

While traditionally associated with movie theaters, projectors have become an increasingly common video display product for consumers used in home, business, and educational settings. Compl. ¶ 8. Today, consumers use digital projectors for personal use in a similar way to television or computer screens. *Id.* ¶ 9. Digital projectors receive video signals from external devices, such

as cable boxes, streaming devices, gaming consoles, and computers, and "project" those signals onto a screen. *Id.* Consumers can purchase projectors in a variety of sizes ranging from the size of a cell phone to larger, permanently mounted projectors often used for home theaters. *Id.* ¶ 10. Within a particular projector category, such as portable consumer projectors, the quality and corresponding price of a specific projector are largely determined by its resolution and light output. *Id.* ¶ 11. Projector light output is measured and described in lumens. *Id.* ¶ 12. The higher the lumen rating, the more light the projector puts out and, all else being equal, the more expensive it will likely be. *Id.*

The lumen rating for a projector is one of the most important and immediately recognizable projector features for consumers, and one that necessarily impacts consumer choice. Compl. ¶ 13. For this reason, lumen ratings are used to create sub-groups of portable projectors, and serve as a measuring stick for consumers to compare projectors. *Id.* ¶ 14. Due to the importance of a projector's light output levels, manufacturers prominently display and advertise a projector's lumen rating in advertising and on the product's packaging, often colloquially referring to the measure of luminous flux as the projector's "brightness." *Id.* ¶ 15. In the case of online marketplaces, sellers list a projector's lumen rating in the product description, title, and even in the product name. *Id.* ¶ 16.

### B. Epson's Projectors

Epson is a leading manufacturer in a variety of categories—including digital projectors. Compl. ¶ 17. As a market leader, Epson continues to set standards for image quality, performance, and innovation with its line of multimedia projectors. *Id.* ¶ 18. Epson's commitment to delivering quality products is recognized by the industry through various product awards and industry-wide recognition. *Id.* Epson has spent millions of dollars and significant time and effort in advertising, promoting, and developing its brand and establishing substantial goodwill in the portable consumer projector market. *Id.* ¶ 20. Epson prides itself on achieving the highest customer satisfaction ratings, accomplished in large part by using the most precise testing equipment and procedures available to ensure accurate product descriptions and specifications. *Id.* ¶ 19.

### C. AWOL's False Advertising of Its Projectors

#### 1. AWOL Projectors

AWOL is a direct competitor of Epson in the portable consumer projector market. Compl. ¶ 21. AWOL sells and offers for sale projectors to consumers throughout the United States via its

brick-and-mortar retail location, its own website www.awolvision.com, and various online commerce sites including, but not limited to, Amazon.com and Walmart.com. *Id.* Defendant sells its projectors under various models including, but not limited to, the AWOL 4K 3D Triple Laser Projector LTV-2500 (the "LTV-2500") and the AWOL 4K 3D Triple Laser Projector LTV-3000 Pro (the "LTV-3000). *Id.* ¶ 22. In its online advertisements, both on its own website and other online commerce sites, Defendant portrays its purported "brightness" values prominently both in the projectors' listing page titles, as well as in multiple places throughout the projectors' listing pages. Compl. ¶¶ 23–30. Defendant makes these statements recognizing the importance of light output to a consumer. Compl. ¶ 31. Throughout each of its products' pages on these various websites, AWOL touts the performance of its projectors in both the product's title and description. *Id.* ¶ 32. In order to gain initial traction in the U.S. projector marketplace, AWOL is purposefully and deceptively inflating the light output specifications of its projectors. *Id.* ¶ 33.

### 2.      Independent Testing

Epson engaged an independent technology consulting company to test the light output, measured in lumens of several of Defendant's LTV-2500 and LTV-3000 projectors. Compl. ¶ 34. Of the AWOL projectors tested by Epson, each projector tested significantly below its advertised lumen value. *Id.*

### 3.      AWOL's Advertisements Deceive Consumers

Defendant's purposeful inflation of the light output values of its projectors has caused, and will almost certainly continue causing, significant confusion in the marketplace. Compl. ¶ 35. As a result, purchasers of any of AWOL's projectors are likely to be, and have actually been, misled and deceived by AWOL's literally false product labeling, descriptions, and advertisements. *Id.* ¶ 36. Light output specifications are one of the most important values to consumers in this space and are also one of the most immediately recognizable projector features for consumers looking to make such a purchase. *Id.* ¶ 13. Consumers expect the represented product specifications to be accurate for AWOL's projectors, as they base their purchasing decisions in large part on these representations. *Id.* ¶ 37. In reality, consumers that purchase Defendant's projectors receive projectors with drastically lower performance outputs than prominently advertised by AWOL. *Id.*

### 4.      AWOL's False Advertising Harms Epson

AWOL's false and misleading product labels, descriptions, and advertisements are damaging to Epson's reputation and goodwill and are also damaging to the consuming public.

Compl. ¶ 38. These false and misleading representations are designed to entice consumers to purchase AWOL projectors over Epson products. *Id.* Moreover, the natural, probable, and foreseeable result of AWOL's wrongful conduct causes confusion, deception, and mistake ***in the consumer projector marketplace as a whole.*** *Id.* ¶ 39. By means of example, after having a poor experience with AWOL's projector with an improperly inflated lumen value of "3000 lumen," the consuming public is less likely to purchase a projector with a lumen rating of 3000 lumens as consumers will be unaware that AWOL's advertised "3000 lumen" projector is not representative of the performance of a true 3000 lumen projector. *Id.* ¶ 40. This causes irreparable harm to Epson as well as to the entire portable projector marketplace. *Id.* Epson is informed and believes that AWOL's wrongful conduct, namely its false advertising, has resulted in increased sales and market share of AWOL's projectors while hindering the sales and market share of Epson's projectors and damaging Epson's goodwill. *Id.* ¶ 41. Epson has sustained and will continue to sustain irreparable damages as a result of AWOL's wrongful conduct, unless enjoined. *Id.* ¶ 42.

Epson asserts causes of action for: (1) False Advertising/Unfair Competition under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*; and (2) False Advertising/Unfair Competition under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §§ 501.201, *et seq.* Compl. ¶¶ 43–56.

## LEGAL STANDARD

The standard for dismissal under Fed. R. Civ. P. 12(b)(6) is well-known. Dismissal is appropriate only when a party "fail[s] to state a claim upon which relief can be granted." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). To state a claim, a complaint must contain "only enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. When considering a motion to dismiss, "all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231–32 (11th Cir. 2000) (citing *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir.1993)). A complaint may not be dismissed pursuant to Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. (citing *Lopez v. First Union Nat'l Bank of Fla.*, 129 F.3d 1186, 1189 (11th Cir.1997))*.* In determining whether a party has stated a claim, the court must take all well-pled allegations as true and construe them in the light most favorable to the plaintiff; the allegations "must be read to include any theory on which the plaintiff may recover." *Itamar Med.,*

6

*Ltd. v. Ectosense NV*, No. 20-60719-CIV-DIMITROULEAS, 2021 WL 12095119, at *7 (S.D. Fla. Dec. 29, 2021); *see also TocMail Inc. v. Microsoft Corp.*, No. 20-60416-CIV-SMITH, 2020 WL 9210739, at *1 (S.D. Fla. Nov. 6, 2020) (quoting *Twombly*, 550 U.S. at 556) ("[A] well-pled complaint survives a motion to dismiss 'even if it strikes a savvy judge that actual proof of these facts is improbable, and that a recovery is very remote and unlikely.'"). On a motion to dismiss under Rule 12(b)(6), "[t]he scope of review must be limited to the four corners of the complaint and attached exhibits." *3Lions Publ'g, Inc. v. Interactive Media Corp.*, 389 F. Supp. 3d 1031, 1036 (M.D. Fla. 2019) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)) (internal quotation marks omitted); *see also Bluegreen Vacations Unlimited, Inc. v. Timeshare Laws. P.A.*, No. 20-24681-Civ-Scola, 2021 WL 3552175, at *2 (S.D. Fla. Aug. 11, 2021) (quoting *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009)).

## ARGUMENT

### A.    Epson's Complaint Is Not Subject to the Heightened Pleading Standard of Rule 9(b).

Defendant's Motion incorrectly argues that Epson's Complaint is subject to the heightened pleading standard of Rule 9(b), despite Defendant's explicit acknowledgement that "the Eleventh Circuit has not weighed in" on whether or not that is, in fact, the case. *See* Mot. at 8. In fact, courts within the Eleventh Circuit (and this District) have declined to apply Rule 9(b) to false advertising claims under the Lanham Act and instead have applied the Rule 8 pleading standard. *See USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*, No. 15-CIV-80352-BLOOM/Valle, 2016 WL 4254257, at *2 (S.D. Fla. Feb. 16, 2016) (collecting cases); *Bluegreen Vacations*, 2021 WL 3552175, at *7 ("[C]ourts in this Circuit tend to apply Rule 8 when addressing motions to dismiss claims under the Lanham Act.") (Scola, J.); *see also Thermolife Int'l LLC v. Vital Pharm. Inc.*, No. 19-cv-61380-BLOOM/Valle, 2019 WL 4954622, at *3 (S.D. Fla. Oct. 8, 2019) (declining to apply Rule 9(b) to Lanham Act claims absent instruction from the Eleventh Circuit to do so). Clearly despite Defendant's suggestion, there is no *per se* or overarching rule set forth by the Eleventh Circuit that Rule 9(b) is to apply to all false advertising claims brought under the Lanham Act. As such, this Court need not apply Rule 9(b)'s heightened pleading standard to Epson's Complaint.

Defendant's Motion also argues that the Rule 9(b) heightened standard must apply to Epson's FDUTPA claim. *See* Mot. at 9. Not so. While it is true that ***some*** courts within the Southern District have applied Rule 9(b) to FDUTPA claims in certain instances, there is no rule or requirement to do so. Many courts within this District have declined to apply this heightened

standard, noting that FDUTPA claims, by their very nature, are unique and distinct from common law fraud, as they require unique specificity. *Bluegreen Vacations*, 2021 WL 3552175, at *7 (declining to apply Rule 9(b) to FDUTPA claim because the specificity required to plead a FDUTPA claim effectively does a similar thing). Although a FDUTPA claim may have a similar flavor to a claim of fraud, "it is different in that, ***unlike fraud***, a party asserting a deceptive trade practice claim ***need not show actual reliance*** on the representation or omission at issue." *Advisors Excel, LLC v. Scranton*, No. 14-60558-CIV-MIDDLEBROOKS, 2014 WL 12543802, at *3 (S.D. Fla. Sept. 15, 2014) (internal quotation marks and citations omitted) (emphasis in original) (explaining that heightened pleading standards should not be imposed via judicial interpretation, choosing to analyze both Lanham Act and FDUTPA claims under Rule 8).

The sufficiency of the allegations within Plaintiff's Complaint should instead be analyzed under the typical Rule 8 standard. As is well known, "[t]he Federal Rules of Civil Procedure require a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Total Compliance Network, Inc. v. Total Compliance Servs., LLC*, No. 17-21038-cv-WILLIAMS/TORRES, 2018 WL 446065, at *2 (S.D. Fla. June 8, 2018) (quoting Fed. R. Civ. P. 8(a)(2)). This does not require a plaintiff to plead detailed factual allegations, but rather requires that a plaintiff articulate "enough facts to state a claim to relief that is plausible on its face" in so that it "raise[s] a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. "A claim contains facial plausibility when a movant pleads enough factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Total Compliance*, 2018 WL 4426065, at *2 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In this instance, and as described in more detail in Section B, Epson's Complaint more than satisfies the requirements under Rule 8, which is the proper pleading standard for its claims.

**B.**    **Even if Rule 9(B) Applied, Epson's Allegations Are Pled With the Requisite Specificity**

Although Epson's Complaint should not be subject to the strictures of Rule 9(b), it is pled with specificity and more than satisfies the heightened pleading standard. Under Rule 9(b), a plaintiff must include "the who, what, when, where, and how" of the alleged misconduct. *USA Nutraceuticals*, 2016 WL 4254257, at *3 (citing *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006)). While Rule 9(b) requires a plaintiff to plead with a heightened level of precision that "offer[s] more than mere conjecture," it is still a practical standard that does not require the plaintiff to set forth its entire case from the outset. *Id.* (quoting *U.S. ex rel. Clausen v.*

*Lab'y Corp. of Am., Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002)). The key to meeting the Rule 9(b) standard is that a plaintiff give a defendant "fair notice of the nature of [p]laintiff's claim." *de Cortees v. Brickell Inv. Realty, LLC*, 546 F. Supp. 3d 1332, 1341 (S.D. Fla. July 1, 2021) (declining to apply Rule 9(b) to Lanham Act false advertising claim, but nonetheless finding that plaintiff's complaint sufficiently met both Rule 8 and Rule 9(b) in that it provided fair notice to defendant and laid out the "who," "what," "when," "where," and "why" of the wrongful conduct). Furthermore, with the recognition that specific factual information is often in the hands of a defendant, a plaintiff is entitled, even under Rule 9(b)'s heightened standard, to "plead based upon information and belief…provided that [plaintiff] accompanies [its] legal theory with factual allegations that make [its] theoretically viable claim plausible." *USA Nutraceuticals*, 2016 WL 4254257, at \*4 (quoting *Hill v. Morehouse Med. Assocs., Inc.*, No. 02-14429, 2003 WL 22019936, at \*3 (11th Cir. Aug. 15, 2003) (internal citations and quotations omitted)). At the end of the day, whether Rule 8 or Rule 9(b) is applied, Epson's Complaint contains well-pled factual allegations that far exceed either standard.

Despite Defendant's argument to the contrary, Epson's Complaint adequately alleges the who, what, when, where, and how of Defendant's misconduct, puts Defendant on notice as to the circumstances constituting Epson's claims, and provides Defendant with more than enough information to prepare an adequate answer. *See* Mot. at 6. Epson's allegations clearly detail the misconduct and circumstances underlying its claims. In fact, the Complaint goes to great lengths to include a "Facts Giving Rise to this Action" section, which includes detailed allegations that precisely outline Epson's actionable concerns with Defendant's advertisements, not to mention numerous screenshots of precise advertisements that exemplify AWOL's false advertising. *See* Compl. ¶¶ 8–42.

Defendant's argument that Epson does not plead facts with particularity as to Defendant's false advertisements simply cannot be taken seriously. *See* Mot. at 10, 12. Defendant is correct that Rule 9(b), for the sake of argument, "requires a plaintiff to identify with precision what the misrepresentation actually was." *Id.* at 12 (quoting *Lawrie v. Ginn Dev. Co.*, 656 F. App'x 464, 474 (11th Cir. 2016). Epson provides seventeen separate screenshots (some of which are taken from the same advertisement(s)), demonstrating the numerous examples of Defendant's misconduct and even goes so far to put boxes and/or arrows around the ***specific and precise portions*** of the advertisements to which Epson takes issue. *See* Compl. ¶¶ 23–29. For example,

9

Epson provided the following screenshots in its Complaint, showing demonstrating advertises the LTV-3000 projector's light output at "3000 Lumen" and the LTV-2500 projector with a light output of "2600 Peak Lumen" and "2600 Lumen" on AWOL's Amazon.com store:





Compl. ¶ 23.[1] Epson explains numerous times in its Complaint the importance of the "brightness" values to consumers shopping in the projector marketplace. *Id.* ¶¶ 12–16, 30–33, 37. Epson then includes a factual allegation showing *why* Epson knows that Defendant's light output values, touted proudly across multiple websites, are false: Epson's independent expert tested the lumen value of several of the LTV-2500 and LTV-3000 projectors and ***none*** tested at or even near their

---

[1] As clearly shown by the ***exact same images*** as are in Epson's Complaint, Epson not only identified where the advertisement was found, but also specifically placed red boxes over the parts of the advertisements Epson alleges are false and in violation of the Lanham Act and FDUTPA.

respective advertised brightness levels. *Id.* ¶ 34. Epson explains in further allegations why these false advertisements have caused (and will continue to cause) confusion in the marketplace, including providing a screenshot of a specific customer review titled "Not bright for a 3K (Laser), short distance projector," which comments on the inadequacy and "lackluster brightness." *Id.* ¶¶ 35–36. Furthermore, Epson then provides numerous factual allegations describing why Defendant's false advertising is damaging to Epson and its goodwill, as well as the entire consumer projector marketplace. *Id.* ¶¶ 38–42.

To be clear, Epson has more than satisfied either pleading standard. Specifically, Epson's allegations clearly answer the "who" (the Defendant, AWOL); the "what" (advertisements stating that AWOL's LTV-2500 projector has a brightness level of 2600 lumen or 2600 "peak lumens" and that AWOL's LTV-3000 projector has a brightness level of 3000 lumen or 3000 "peak lumens," are false after independent testing conducted by Epson); the "when" (around May 6, 2024 when the Complaint was filed); the "where" (on various websites including awolvision.com, Amazon.com, and Walmart.com); and the "why" (to unfairly gain advantage and market space in the consumer projector marketplace). *See generally*, Compl.; *see also de Cortes*, 546 F. Supp. 3d at 1341 (finding that plaintiffs satisfied both Rule 8 and Rule 9(b) pleading standards where the court could answer the who, what, when, where, and why with plaintiff's allegations).

**C.    Epson's Lanham Act Cause of Action Satisfies the Required Elements**

"To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Hi-Tech Pharmas., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1196 (11th Cir. 2018) (quoting *Ashcroft*, 556 U.S. at 678 (internal quotation marks and additional citations omitted). In other words, the Complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Here, Epson's Complaint establishes a valid claim for false advertising under the Lanham act, 15 U.S.C. § 1125. In fact, Epson's claims are identical to those already found plausible by various United States District Courts where defendants advertised literally false brightness values for their projectors. *See Epson Am., Inc. v. Sunvalleytek Int'l, Inc.*, No. 8:23-cv-00735-JVS-ADS, 2024 WL 2104600 at *4 (C.D. Cal. Apr. 22, 2024) ("Taken as true at the stage of an application for default judgment, Epson's allegations sufficiently state a claim for false advertising under the Lanham Act… Epson establishes that Sunvalleytek's advertisements are literally false when advertising projectors with

11

inflated and incorrect light outputs."); *Epson Am., Inc. v. AuKing,* No. 1:23-113670-LTS, 2023 WL 11700166 (D. Mass. Jan. 3, 2024) ("Here, the allegations of Epson's Complaint, which are now taken as true, make clear that Defendant is making literally false claims regarding its projectors. Specifically, Defendant advertises its projectors with inflated incorrect, and literally false brightness values - an attribute of particular importance to consumers in the market for projectors."); *see also Epson Am., Inc. v. Shenzhen Rongchuang Youpin Elec. Com. Co., Ltd.*, 1:24-cv-10563-LTS (D. Mass. June 28, 2024) (granting default judgment and injunction preventing falsely advertising the light output of defendant's projectors after allegations of the complaint were taken as true); *Epson Am., Inc. v. USA111, Inc.*, 259 F. Supp. 3d 387, 391 (D.S.C. 2017) (granting Epson's request for preliminary injunction against projector competitor that falsely advertised/overinflated the light output of its projectors).

To state a claim of false advertising under the Lanham Act, a plaintiff must allege that: "(1) the defendant's advertisements were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented [goods or] service[s] affects interstate commerce; and (5) the plaintiff has been, or likely will be, injured as a result of the false or misleading advertisement." *Bluegreen Vacations*, 2021 WL 3552175, at *8 (citing *Sovereign Mil. Hospitaller Ord. of St. John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers*, 702 F.3d 1279, 1294 (11th Cir. 2012)). FDUTPA declares unlawful: "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Bluegreen Vacations*, 2021 WL 3552175, at *10 (quoting Fla. Stat. § 501.204(1)). To state a false advertising claim under FDUTPA, a plaintiff must plead three elements: "(1) a deceptive act or unfair practice in the course of trade or commerce; (2) causation; and (3) damages." *USA Nutraceuticals*, 2016 WL 4254257, at *3.

Because the elements and proof required for Epson's Lanham Act claim and its FDUTPA claim are identical, Epson need not specify allegations satisfying each individual element of the state law claim. *See e.g., Nat. Answers v. Smithkline Beecham*, 529 F.3d 1325, 1333 (11th Cir. 2008) ("claim for a violation of [FDUTPA] rises or falls on the success of its trademark infringement and false advertising claims"); *Diamond Resorts Int'l, Inc. v. Aaronson*, 371 F. Supp. 3d 1088, 1115 (M.D. Fla. 2019) (internal quotation marks, citations, and formatting omitted) ("Ultimately, the success of a plaintiff's FDUTPA claim is tied to the federal Lanham Act claim

for false advertising."). Therefore, Epson's Opposition focuses on the Lanham Act claim, knowing that the two claims will rise or fall together.

> **1.**      **Epson Adequately Pleads That Defendant's Advertisements Are Literally False**

Epson has sufficiently pled, with specificity, that AWOL has made literally false statements regarding the characteristics of its projectors. The first element of a false advertising claim is "satisfied if the challenged advertisement is literally false, or if the challenged advertisement is literally true, but misleading." *Johnson Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002).

Defendant alleges that Epson "fails to allege literal falsity with the requisite particularity" because its "allegations are conclusory and unsupported by factual allegations." Mot. at 10–12. *Not so.* Rather, Epson has properly alleged, with specificity, that Defendant's advertisements are literally false. Epson first shows numerous instances of Defendant advertising its LTV-2500 and LTV-3000 projectors with brightness values of 2600 lumens and 3000 lumens, respectively. Compl. ¶¶ 23–29. Moreover, Epson "identif[ies] with precision what the misrepresentation actually [is]" by not only including **seventeen screenshots** of Defendant's false advertisements, but also **specifically pointing to** the specific literally false representations (i.e. the lumen values) by marking those specific literally false portions of the advertisement with bright red boxes. *See* Mot. at 12 (quoting *Lawrie*, 656 Fed. App'x at 474); *see also supra*, at p. 8; Compl. ¶¶ 23–29. Epson also alleges, with specificity, **why** those advertisements are literally false, as Epson alleges that its independent expert tested several of Defendant's LTV-2500 and LTV-3000 projectors and that each projector emitted significantly lower light output values as compared to the false values advertised by Defendant. *Id.* ¶ 34.

By performing its own tests and alleging same, Epson has established that Defendant's advertisements are contradicted or unsupported by Epson's scientific testing; every single test done by Epson yielded results far below the advertised values. Compl. ¶ 34; *see Hi-Tech Pharmas.*, 910 F.3d at 1197 (finding that plaintiff's assertion that defendant's advertisement as to how many grams of protein are in its product is "a specific assertion about physical and chemical fact that is either true or false, no matter what legal conclusions it may or may not support"). Epson addresses below the attempts to mislead the Court with non-scientific "peak" measurements, but AWOL's

arguments on that issue are immaterial: the question is whether Epson has adequately pled the elements of its claim, and it clearly has, with more than the requisite specificity under **_any_** standard.

> **2.      Although Not Required Because Defendant's Advertisements Are Literally False, Epson Adequately Pleads That Defendant's False Statements Cause Consumer Confusion**

Defendant argues that Epson fails to allege consumer deception with the requisite specificity. *See* Mot. at 13. However, this is simply not the case. Epson alleges that the marketplace is confused by Defendant's false advertisements, and **_specifically_**, confused by Defendant's false statements as to its projectors' lumen values.[2] Compl. ¶ 35–38. This includes a screenshot of an Amazon.com customer review evidencing an example of this confusion; the customer's lengthy review includes statements like the LTV-2500 projector is "disappointing," "[s]omething is off about the brightness," there are "other issues with lackluster brightness." *Id.* ¶ 36. Defendant argues that this review should not be considered because it is a "***single*** review;" there are other positive reviews Epson skipped over; and that "there is no way to know the exact settings this reviewer used…how far the projector was positioned from the screen, whether there was ambient light in the room, or whether the reviewer even saw the lumens values before purchasing the projector." Mot. at 14. Epson finds the last clause of this argument particularly absurd, given that, as Epson's Complaint details, the lumens value is plainly in the product listing on Amazon (the site where the review appeared), and that every single one of Defendant's advertisements known to Epson—and included as screenshots in the Complaint—display the falsified lumens values prominently. *See* Compl. ¶¶ 25–27, 29. However, as a general matter, Defendant's demand that Epson produce additional evidence in support of its allegations of deception is contrary to the law and beyond what is required at this stage of litigation. *See Hi-Tech Pharmas*, 910 F.3d at 1197–98 (explaining that a theory of consumer deception, based on the "reasonable consumer," was at least plausible); *see also N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1225 n.12 (11th Cir. 2008) (explaining that whether a statement is literally false is a finding of *fact*). That Epson was able to easily find such a review mentioning the disappointment with the light output given the advertised values is unusual, and certainly more than is required in a Complaint to demonstrate

---

[2] Although Epson sufficiently pleads this element, it should be noted that Epson **_is under no such obligation to do so_**, as it has sufficiently pled that the advertisements are literally false and "[o]nce a court deems an advertisement to be literally false, the movant need not present evidence of consumer deception." *See 1-800 Contacts*, 299 F.3d at 1247.

the likelihood that a false advertisement could deceive the reasonable consumer. Epson has far exceeded the level of detail and particularity needed at the motion to dismiss stage; *see also Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1278 (11th Cir. 2015) ("explaining that determining whether a statement is false or misleading is a 'fact-intensive' inquiry.") To hold otherwise would halt the majority of plaintiffs from bringing litigation and obviate the discovery process.

3.      **Epson Adequately Pleads That Defendant's False Statements Are Material**

In order to establish materiality, Epson must demonstrate that "the defendant's deception is likely to influence the purchasing decision." *1-800 Contacts*, 299 F.3d at 1250 (internal quotation marks omitted). Epson has certainly and sufficiently pled that the lumen value of a projector is of top importance to consumers. Indeed, as stated by the Court in *Auking*, "[t]he Court need not engage in any mental gymnastics or rely solely on Epson's allegations (which it may do in this default scenario) to determine that Defendant's misrepresentations, including, but not limited to, advertising two different brightness values for the exact same projector model, were material to consumers' purchasing decisions. It is common sense that brightness is an inherent quality or characteristic of digital projectors." *AuKing*, 2023 WL 11700166.  In its complaint, Epson repeatedly explains in its allegations the importance of projector light output to consumers in the projector marketplace and why Defendant's false statements are, thus, material. Compl. ¶¶ 12–16, 30–33, 37. But looking at the screenshots of the advertisements themselves, it is clear that AWOL understands the importance of this measurement to potential customers, as it advertises its (false) lumen value ***in multiple places in each advertisement***, including the title of the product, the product description, and additional picture advertisements. *Id.* ¶¶ 23–29. Certainly, Epson's allegations, taken in the light most favorable to Epson, make clear that the advertised light output value of a projector is one of the most important, if not ***the*** most important, specification for a purchasing customer.

4.      **Epson Adequately Pleads That Defendant's False Statements Were Made in Interstate Commerce**

Defendant does not challenge that Epson alleges that Defendant's statements were made in interstate commerce. This is not surprising, since for decades, courts have held that "distribution of [products] to end-users over the internet satisfies the use in commerce" predicate. *Planetary Motion v. Techplosion*, 261 F.3d 1188, 1194 (11th Cir. 2001). To be sure, AWOL and Epson can

at least agree that Defendant puts its products into the stream of interstate commerce by its advertisements and sale of product via awolvision.com, Amazon.com, Walmart.com, and likely others, all of which are advertised and accessible to out-of-state individuals. Thus, it is undisputed that in selling and advertising its projectors to consumers throughout the United States (and the world) through these various online marketplaces, Defendant's false representations have been made in interstate commerce, thus satisfying the fourth element of the Lanham Act analysis, under any standard.

### 5.    Epson Adequately Pleads It Has Been and Will Continue to Be Injured by AWOL's False Advertisements

AWOL's last-ditch attempt to succeed relies upon its argument that Epson does not sufficiently plead that Defendant's false advertisements have caused or will continue to cause Epson harm. Again, AWOL's argument falls flat. To satisfy the final element of a false advertising claim under the Lanham Act, Epson must show that it has been or is likely to be injured as a result of the misrepresentation of which it complains. *See 1-800 Contacts*, 299 F.3d at 1246; *see SouthState Bank, N.A. v. Qoins Techs., Inc.*, 2024 WL 911075, at *11–12 (N.D. Ga. Mar. 1, 2024) (citing *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 52 U.S. 118, 140 (2014). To be sure, Epson sufficiently pleads allegations relating to its injury, including that the Defendant's false advertisements are designed to entice consumers to purchase AWOL's products over Epson products and that the natural, probable, and foreseeable result of these false advertisements is that it will cause confusion, deception, and mistake in the projector marketplace as a whole. Compl. ¶¶ 37–39, 40–42. Defendant's factual allegations, especially as taken together in the light most favorable for Epson, make it extremely likely (and thus, more than plausible) that Defendant's false advertisements do (and will continue to) negatively impact Epson's sales, reputation, and goodwill.

### D.    Most of AWOL's Argument Cannot Be Considered at All Because It is Outside the Four Corners of the Complaint

AWOL seeks dismissal by urging the Court to base its determination of whether Epson stated a claim upon facts far outside the Complaint and ignoring Epson's pleading. Specifically, AWOL links to various websites and includes screenshots, of which it asks the Court to take judicial notice. Mot. at 2, 3, 4. These sites include its own product listings, but also unrelated press releases issued by Epson as far back as 2016, and reviews of Epson's projectors on third-party sites. *See, e.g. id.* at 4, fn. 7, 8. AWOL attempts to draw the Court's attention to other, unrelated

lawsuits, which AWOL characterizes as "copycat[s]." AWOL places in its "Statement of Facts" a series of statements presented as true under the heading "There are a Myriad of Ways to Measure and Report Projector Brightness." *Id.* at Part II.B. In this section, AWOL does not cite a single paragraph of the Complaint. Defendant also fails to cite any other valid source as it makes sweeping (incorrect) legal and scientific conclusions about the measurement of lumens, the standards applied to the practice of taking said measurements, and the variance of light output based on projector "mode." This prefaces AWOL's argument that Epson's claims fail because Epson's expert measured the light output in "lumens" but did not consider the potential "peak" lumen value (a fictitious measurement created by Defendant). *See, e.g.*, *id.* at 1. While making this argument, AWOL cites only itself, referring back to Part II.B. *Id.* at 10. Through these arguments and others peppered throughout, AWOL asks the Court to consider facts outside the well-pled allegations contained within Epson's Complaint.

Such consideration is prohibited: the "court's review on a motion to dismiss is limited to the four corners of the complaint." *Wilchombe*, 555 F.3d at 959. With limited exceptions, the Court looks only to the allegations in a complaint, any documents appended to the complaint or incorporated by reference into it, and any judicially-noticed facts. *Reed v. Royal Caribbean Cruises Ltd.*, No. 20-CV-24979-RAR, 2022 WL 3027906, at *6 (S.D. Fla. Aug. 1, 2022) (J. Ruiz). AWOL cites to the (now moot) Motion for Preliminary Injunction [DE 9] and AWOL's Opposition [DE 28] in support of this argument, as if citing to another docket entry in the case somehow allows it to circumvent the Rules of Civil Procedure limiting their Motion to the four corners of the Complaint. AWOL also makes myriad references to (and attacks against) the specifics of the testing done by Epson's independent laboratory. *See, e.g.*, Mot. at 1, 3, 4, 6, 10, 11, 12. However, AWOL does not mention that said testing was not attached to the Complaint, and therefore does not even attempt to argue that the testing should be considered as "incorporated by reference." *Reed*, 2022 WL 3027906, at *6; *see also Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). However, Epson need not shy away from the test reports or the accompanying affidavits of its qualified expert as it does not dispute the documents' authenticity and, as the scientific data only bolsters its claims. So that the Court is not tainted by this misinformation, Epson will attempt to provide some context.

Defendant tries to argue that Epson does not address that ***some*** of AWOL's advertisements use "peak lumens" versus merely "lumens" values, but this is (1) not required at this stage and,

more importantly, (2) is a red herring because a "lumen" is an internationally-recognized unit of measurement, technically called "luminous flux," a derivative SI (metric system) unit with the symbol "lm" listed alongside centimeters and kilograms, and there is no such thing as a "peak lumen" (similar to how a layperson knows there is no such thing as "peak centimeters."). *C.f.* Mot. at 12. Defendant attempts to confuse the Court by suggesting that the ISO 21118 protocol for performing the scientific methods to standardize the act of measuring lumens is somehow unique from whatever "standard" would measure the nonsensical "peak" lumen. *See id*. What AWOL either does not understand or ignores is that while various organizations set forth procedures and best practices for measuring lumens, and those "standards" are sometimes denoted in advertising to demonstrate the method used to capture the light output value stated and provide legitimacy (i.e. ISO or IDMS, *id*. at 4)[3], if a scientist measured the same projector under any of the standards, the lumen value should be ***exactly the same***. The only differences would occur based upon human or instrument error. Just as there are many mechanisms and machines to measure how fast an Olympian is swimming or running, from the simplest stopwatch to the most sophisticated sensor, the athlete's actual speed is still the same.[4]

Defendant improperly attempts to argue that Plaintiff must try its entire case in the Complaint rather than simply plead facts sufficient to establish a cause of action. In fact, AWOL goes so far to suggest that Epson's Complaint should be dismissed because Epson does not itself prove the correct lumens values of the projectors. *See* Mot. at 12. While Defendant can present its own evidence and dispute the truthfulness of Epson's allegations at a later stage, such as summary judgment, "no part of the *Twombly-Iqbal* pleading standard requires a plaintiff to provide ***evidence*** for the factual allegations in a complaint before they are 'entitled to the assumption of truth' at the motion-to-dismiss stage." *Id.* (quoting *Iqbal*, 556 U.S. at 679)). Surely, the numerous screenshots of Defendant's advertisements, including specifically pointing out Defendant's false statements as

---

[3] AWOL also references LED stands for "light-emitting diode" and is a type of device that emits light when electrical current flows through it. LED light bulbs emit light, the output of which is measured in lumens, but LED is not a "standard" of lumen measurement. Like lumens, "Lux" is another SI (metric) unit of measurement, denoted with the symbol "lx" and defined as the lumens per unit area (usually a square meter). This is an undisputed scientific fact.

[4] While Epson disputes that this argument (and any facts or documents outside the Complaint) should be considered, should the Court seek an expert's explanation for what is summarized briefly above, it can review the Supplemental Affidavit of Karl Lang attached as an exhibit to Epson's Reply in Support of its Motion for Preliminary Injunction [DE 34-1].

to its projectors' "brightness" — as well as the representation that Epson conducted its own testing and every single projector tested had a light output that repeatedly fell far below the advertised lumens values — is enough, taken as true, to survive a motion to dismiss.

Even if the Court were to ignore that Defendant has flagrantly violated Rule 12(b)(6) by arguing matters outside the four corners of the Complaint, it makes no difference to the end result: Epson has properly pled the elements of its Lanham Act claim (as detailed above) and its FDUTPA claim based on the same set of allegations, given the interaction between the two counts. Under any appropriate standard of review, AWOL's conduct as pled in the Complaint violates federal and Florida law, and the Motion should be denied.

## **CONCLUSION**

For the reasons set forth herein, Epson respectfully requests that the Court deny Defendant's Motion in its entirety. Should the Court grant any portion of the Motion, Epson respectfully requests leave to amend.

Dated: August 9, 2024

*/s/ Mallory Cooney*
MALLORY COONEY
Florida Bar No. 125659
mallory.cooney@klgates.com
K&L GATES LLP
200 S Biscayne Boulevard, Suite 3900
Miami, FL 33131
Telephone: (305) 539-3300

Morgan T. Nickerson (*Pro Hac Vice*)
morgan.nickerson@klgates.com
**K&L GATES LLP**
State Street Financial Center
One Lincoln Street
Boston, MA 02111
(617) 261-3100
(617) 261-3175

*Counsel for Plaintiff Epson America, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing on this 9th day of August 2024.

/s/ Mallory Cooney
MALLORY COONEY

## **SERVICE LIST**

Diana Marie Fassbender, Esq.
dszego@orrick.com
ORRICK, HERRINGTON &
SUTCLIFFE LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005

*Attorneys for Defendant Safe Space Scan*
*Technology LLC d/b/a AWOL Vision*

319677284.4